**No. 26-20159**

# In the United States Court of Appeals
# For the Fifth Circuit

**CANADA HOCKEY, L.L.C., DOING BUSINESS AS EPIC SPORTS; MICHAEL J. BYNUM,**

***Plaintiffs-Appellants,***

**v.**

**BRAD MARQUARDT, IN HIS INDIVIDUAL CAPACITY,**

***Defendant-Appellee.***

Appeal from the United States District Court for the Southern District of Texas
No. 4:17-CV-181

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**


Charles W. Prueter
FORTIF LAW PARTNERS, LLC
2021 Morris Avenue, Suite 300
Birmingham, Alabama 35203
Telephone: (205) 792-2639
charles@fortif.com

Ernest A. Young
*Counsel of Record*
3208 Fox Terrace Dr.
Apex, North Carolina 27502
Telephone: (919) 360-7718
young@law.duke.edu

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF INTERESTED PERSONS

No. 26-20159

Canada Hockey, L.L.C., doing business as Epic Sports; Michael J. Bynum,

*Plaintiffs-Appellants*

v.

Brad Marquardt, in his individual capacity,

*Defendant-Appellee*

The undersigned counsel of record certifies that the following listed persons described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Canada Hockey, L.L.C., doing business as Epic Sports (plaintiff-appellant) (Canada Hockey, L.L.C. has no parent corporation and no publicly held corporation owns 10% or more of its stock.)

Michael J. Bynum (plaintiff-appellant)

Ernest A. Young (counsel for plaintiffs-appellants)

Charles W. Prueter (counsel for plaintiffs-appellants)

Fortif Law Partners, L.L.C. (counsel for plaintiffs-appellants)

Ralph Oman (*amicus curiae* in the district court in support of plaintiffs)

Dwoskin Wasdin LLP (counsel for plaintiffs-appellants in the district court)

Munger Tolles & Olson, LLP (former counsel for plaintiffs-appellants)

E. King Gill Family

Brad Marquardt (defendant-appellee)

H. Melissa Mather (former counsel for all original defendants except the 12th Man Foundation)

Ray Chester (counsel for defendant-appellee)

Ian Davis (counsel for defendant-appellee)

McGinnis Lochridge LLP (counsel for defendant-appellee)

Julie Ann Ford (counsel for defendant-appellee)

George Brothers Kincaid & Horton LLP (counsel for defendant-appellee)

Hon. Andrew S. Hanen, senior district judge for the Southern District of Texas

National Union Fire Insurance Co. of Pittsburgh, PA (insurer that, based on information provided to plaintiffs, may be liable for part or all of a judgment against defendant)

Respectfully submitted,

s/*Ernest A. Young*
Ernest A. Young
*Counsel of Record*

3208 Fox Terrace Dr.
Apex, North Carolina 27502
Telephone: (919) 360-7718
young@law.duke.edu

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-appellants Canada Hockey, L.L.C. and Michael J. Bynum respectfully request oral argument. This appeal involves fundamental issues concerning the scope of state sovereign immunity and the accountability of state government officers for violations of federal law. The District Court agreed that the allegations of egregious copyright infringement in this case, taken as true, would amount to significant violations of the federal Copyright Act and the Digital Millennium Copyright Act. And Congress underscored its intent to hold state officers accountable for such violations in the Copyright Remedies Clarification Act, 17 U.S.C. § 511. But the District Court held that state law, in the form of the Texas Tort Claims Act, could limit the liability of state officers for federal copyright infringements and, in consequence, narrow the remedies available under federal law. In so doing, the court misapplied binding Supreme Court precedent and upset fundamental principles concerning state sovereign immunity and the distinction between personal- and official-capacity suits. Oral argument will aid the Court in assessing the issues in this important case.

## TABLE OF CONTENTS

**Certificate of Interested Persons** ........ i
**Statement Regarding Oral Argument** ........ iii
**Table of Authorities** ........ vi
**Statement of Jurisdiction** ........ 1
**Introduction** ........ 1
**Statement of the Issues Presented for Review** ........ 2
**Statement of the Case** ........ 2
**I. Background to the Dispute** ........ 3
**II. Procedural History** ........ 9
**Summary of Argument** ........ 17
**Standard of Review** ........ 17
**Argument** ........ 19
**I. The District Court's application of the Texas Tort Claims Act to bar Plaintiffs' federal copyright claims hinged on its belief that Marquardt—a state officer sued in his personal capacity—was entitled to invoke Texas's sovereign immunity** ........ 19
**II. Texas's sovereign immunity does not cover state officers sued in their individual capacity for violations of federal law.** ........ 23
A. Officer suits for damages take fundamentally different tracks depending on whether the suit is in the officer's official or personal capacity. ........ 24
B. The party-of-record rule foreclosing officers from invoking the state's immunity is longstanding and serves vital functions. ........ 33
C. The District Court's treatment of this case prior to the motion for judgment on the pleadings demonstrated its understanding that sovereign immunity did not cover Marquardt in his individual capacity. ........ 35
D. The authorities cited by Marquardt and the District Court do not support extending the state's sovereign immunity to its officers ........ 39

**II. Texas statutes cannot limit the application of the federal Copyright Act to state officers. ....................................................42**

**Conclusion..............................................................................................49**

**Certificate of Compliance.......................................................................50**

**Certificate of Service..............................................................................51**

## TABLE OF AUTHORITIES

Page

**Cases**

*Alden v. Maine*, 527 U.S. 706 (1999) ....................................................17, 34
*Aldridge v. Miss. Dept. of Corrections*, 990 F.3d 868 (5th Cir. 2021) .........18
*Allen v. Cooper*, 589 U.S. 248 (2020) .......................................12, 16, 42, 43
*Black v. N. Panola Sch. Dist.*, 461 F.3d 584 (5th Cir. 2006) .....................n.18
*Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435 (5th Cir. 2015) ...........17
*Bynum v. Marquardt*, 2020 WL 5332994 (S.D. Tex. Sept. 4, 2020) ............13
*Campinha-Bacote v. Bleidt*, 2011 WL 4625394 (S.D. Tex. Oct. 3, 2011) ...n.9
*Canada Hockey LLC v. Texas A&M Univ. Athletic Dept.*, 484 F.Supp.3d 448 (S.D. Tex. 2020) ..........................................................................................12
*Canada Hockey, LLC v. Marquardt*, 2021 WL 4096585 (5th Cir. Sept. 8, 2021) ..........................................................................................................35
*Canada Hockey, LLC v. Marquardt*, 2022 WL 252186 (5th Cir. Jan. 26, 2022) ...................................................................................................14, 15
*Canada Hockey, LLC v. Texas A&M Univ. Athletic Dept.*, 2022 WL 445172 (5th Cir. Feb. 14, 2022) .........................................................................13, 14
*Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008) ..........................................18
*Ford Motor Co. v. Dept. of Treasury of State of Indiana*, 323 U.S. 459 (1945) ..........................................................................................................30
*Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011) .......................................44
*Gentilello v. Rege*, 627 F.3d 540 (5th Cir. 2010) ..........................................17
*Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023) .........................................18
*Hafer v. Melo*, 502 U.S. 21 (1991) ................................23, 25, 26, 27, 31, 32
*Haywood v. Drown*, 556 U.S. 729 (2009) .......................................45, 46, 47
*Hines v. Davidowitz*, 312 U.S. 52 (1941) ...................................................44
*Howlett v. Rose*, 496 U.S. 356 (1990) .......................................45, 46, 47, 48
*James v. Hegar*, 86 F.4th 1076 (5th Cir. 2023) .........................................n.15
*Johnson v. Miller*, 98 F.4th 580 (5th Cir. 2024) ..........................................17
*Johnson v. Prairie View A&M Univ.*, 587 Fed. Appx. 213 (5th Cir. 2014) ..40

*Kentucky v. Graham*, 473 U.S. 159 (1985) ..................................................23
*Kersavage v. Univ. of Tennessee*, 731 F. Supp. 1327 (E.D. Tenn. 1989) .....n.9
*Knick v. Township of Scott*, 588 U.S. 180 (2019) ........................................12
*Laviage v. Fite*, 47 F.4th 402 (5th Cir. 2022) ..............................................18
*Lewis v. Clarke*, 581 U.S. 155 (2017) ...........................27, 28, 30, 31, 39, 40
*Lowery v. Univ. of Houston-Clear Lake*, 82 F. Supp.2d 689 (S.D. Tex. 2000) ..........................................................................................................40
*Maine v. Thiboutot*, 448 U.S. 1 (1980) ......................................................n.8
*Marketing Information Masters, Inc. v. Bd. of Trustees of Cal. St. Univ. System*, 552 F. Supp. 2d 1088 (S.D. Cal. 2008) ................................n.9, n.16
*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of Univ. System of Georgia*, 2008 WL 1805439 (M.D. Ga. Apr. 18, 2008) .............................................n.9
*Neinast v. Texas*, 217 F.3d 275 (5th Cir. 2000) ...........................................36
*Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824) ..........32
*Owen v. City of Independence*, 445 U.S. 622 (1980) ................................n.19
*Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir. 1988) ...28, 29, 47, 48
*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ......................................n.4, n.5, n.7
*Thongsonlone v. Office of the Att'y Gen. for Texas*, 2018 WL 1898457 (S.D. Tex. Apr. 20, 2018) ......................................................................38, 39, 40
*United States v. Georgia*, 546 U.S. 151 (2006) ...........................................12
*United States v. Lee*, 106 U.S. 196 (1882) ...............................................n.12
*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) .............................................2
*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) ........................n.6
*Zyla Life Sciences, LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326 (5th Cir. 2025) ...................................................................................................43

**Statutes and Rules**

17 U.S.C. § 101 et seq. ...........................................................................2, 41
17 U.S.C. § 501 ..........................................................................................41
17 U.S.C. § 511 ...........................................................................2, 41, 43, 44
17 U.S.C. § 1202 .....................................................................................5, 10

28 U.S.C. § 1291 ........................................................................................1
42 U.S.C. § 1983 ........................................................................25, 27, 28, 34
Copyright Remedy Clarification Act, Pub. L. 101-553 (Nov. 15, 1990) 41, 43
Tex. Civ. Prac. & Rem. Code § 101.106 .............2, 15, 16, 19, 20, 21, 43, 44
Fed. R. Civ. P. 12 .........................................................................10, 11, 15, 19
Fed. R. Civ. P. 54 ........................................................................................12

**Constitutional Provisions**

U.S. Const. amend. XI ..................................................................21, 27, 32
U.S. Const. art. VI, cl. 2 (Supremacy Clause) .......................................47, 48
Tex. Const. art. VII, § 8(d) ...........................................................................6

**Other Authorities**

William Baude et al., *Hart and Wechsler's The Federal Courts and the Federal System* (8th ed. 2025) .......................................................n.11, n.13
Erwin Chemerinsky, *Federal Jurisdiction* (8th ed. 2021) ..........22, 31, 39, 46
John C. Jeffries, Jr., *In Praise of the Eleventh Amendment and Section 1983*, 84 Va. L. Rev. 47 (1998) ........................................................................31, 34
Douglas Laycock, *Modern American Remedies: Cases and Materials* (3rd ed. 2002) ..........................................................................................................21
John Orth, *The Judicial Power of the United States: The Eleventh Amendment in American History* (1987) ...........................................................................33
13 Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Juris.* § 3524.2 (3d ed., updated 2026) ..............................................................21, n.11, n.13

## STATEMENT OF JURISDICTION

On February 16, 2026, the district court dismissed all claims against Defendant Brad Marquardt. ROA 7639. The court entered final judgment in favor of Marquardt on March 12, 2026. ROA 7653. Plaintiffs filed a timely notice of appeal on April 3, 2026. ROA 7654. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## INTRODUCTION

This was once a complicated case, but it has boiled down to a simple appeal. Plaintiffs initially brought claims for copyright infringement and an unconstitutional taking of their intellectual property against the Athletic Department of Texas A&M University, a private foundation, and three individual officers of the Department. Both the District Court and this Court ultimately rejected Plaintiffs' attempts to pierce the University's state sovereign immunity. But the District Court did permit the copyright claims to go forward against Marquardt, the most directly culpable officer, in his personal capacity, and this Court rejected his appeal from the District Court's denial of summary judgment on qualified immunity. But six years after ruling that Plaintiff's suit against Marquardt could proceed, the District Court abruptly decided that the state's sovereign immunity extended to this

personal-capacity suit. This basic error raises the following questions for this Court:

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether Defendant Marquardt was entitled to invoke the protection of Texas's state sovereign immunity, notwithstanding that Marquardt was sued in his individual capacity for damages under the federal Copyright Act, simply because Marquardt's infringing acts fell within the scope of his public employment.

2. Whether the federal Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Copyright Remedy Clarification Act, 17 U.S.C. § 511, preempted any limitations on federal copyright claims imposed by the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §§ 101.106(a) & (f).

## STATEMENT OF THE CASE

The facts set forth here are alleged in plaintiffs' First Amended Complaint ("complaint"). At the pleading stage, those facts must be taken "as true and view[ed] . . . in the light most favorable to the plaintiff[s]." *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013).

## I. Background to the Dispute

Plaintiff Michael J. Bynum has written and edited over 100 sports-related books, including books on famous Texas sports teams and players. ROA 309. Bynum has chronicled the achievements of Texas's football players; written biographies celebrating the history of college football in Texas; and authored a best-selling coffee table book chronicling the greatest moments in Texas high school football history. ROA 309. Bynum's works have consistently been successful, and many of his books have sold over 50,000 copies. ROA 309-10.

As a result of his sports-related research, Bynum became fascinated with the story of the "12th Man" of the Texas A&M University ("TAMU") football team. ROA 310. According to the story, in 1922 a man named E. King Gill was a "squad player" for that team—*i.e.*, a player who helps the members of the team practice, but does not himself play in games. ROA 310. During one high-stakes game in which Gill was sitting in the audience, member after member of the TAMU team suffered injuries that forced them to the sidelines. Gill came down from the bleachers and suited up—ready to step in at a moment's notice. ROA 310-11. When the TAMU "Aggies" won the game in an extraordinary upset, Gill was the only man left on the team's

bench. His willingness to play has served as a symbol of unity and loyalty for generations of TAMU students. ROA 310-11.

Bynum set out to develop a book that would tell E. King Gill's full story. ROA 311. After conducting substantial background research of his own, Bynum commissioned Whit Canning, a well-known sportswriter for the *Fort Worth Star-Telegram*, to review Bynum's research and use it to draft a biography of Gill (the "Biography") on a work-for-hire basis. ROA 310-12, 316. Over the next decade and a half, Bynum devoted over 1,500 hours to researching, writing, and editing the book, intending the Biography to be its cornerstone. ROA 312-13. He planned to publish the book in the fall of 2014, to coincide with the 75th anniversary of TAMU's 1939 championship season. ROA 316.[1]

Given his long-standing interest in Texas sports and his work on the book, Bynum interacted frequently with members of the TAMU Athletic Department (the "Department"). For instance, in 2000 and 2001, Bynum

---

[1] Pursuant to an agreement with Bynum, Epic Sports (the publishing imprint of plaintiff-appellant Canada Hockey LLC) owns the exclusive rights to publish the book and the Biography. ROA 328. The book containing the Biography is registered with the U.S. Copyright Office and has been assigned U.S. Copyright Registration Nos. TXu002020474 and TXu002028522. ROA 328.

visited the Department and met with Brad Marquardt, the Associate Director of Media Relations, and Alan Cannon, then an Assistant Director for Media Relations. ROA 312. Bynum informed them of his work developing the 12th Man book and asked them to help confirm some facts about Gill's tenure at TAMU. ROA 312; *see id.* ROA 317 (additional contact between Bynum and Marquardt in 2013).

In June 2010, Bynum emailed Marquardt seeking photographs for the book. ROA 312-14. To bolster the request, he attached a PDF of a full draft of the book, specifying that he had provided it only for Marquardt's "review" and that it was "not in final form yet." ROA 343-488. The cover of the draft book indicated that it was "[e]dited by Mike Bynum," and page 6 of the draft included copyright management information—specifically, the label "Copyright © 2010 by Epic Sports" and the admonition that "[n]o part of this work covered by the copyright hereon may be reproduced or used in any form or by any means . . . without the permission of the publisher." ROA 345, 350; *see* 17 U.S.C. § 1202(c). The Biography, bearing the title "An A&M Legend Comes to Life," began on page 9 and stated that it was "by Whit Canning." ROA 353.

In January 2014, the Department made a push to raise millions of dollars and solidify control over the 12th Man trademark. The Department, in conjunction with a private organization called the "12th Man Foundation" (the "Foundation"), engages in extensive efforts to raise funds because it is barred by Texas law from receiving any public tax dollars. *See* Tex. Const. art. VII, § 8(d); *see also* ROA 307, 311 (non-profit called the "12th Man Foundation" raised almost $400 million for the Department from July 2010 through June 2014). As part of those efforts, the Department has aggressively policed use of the term "12th Man," including against professional sports teams. ROA 311; *see id.* (TAMU registered "12th Man" as trademark in 1990). Accordingly, the Department directed its staff, including Marquardt and Cannon, to locate background information on Gill. ROA 318.

Marquardt had in his office the PDF of Bynum's book that Bynum had sent by email. Marquardt directed his secretary to retype the Biography and to remove any reference to Bynum or to Epic Sports' copyright information. ROA 321. Marquardt also rewrote the byline on the Biography to read "by Whit Canning, special to Texas A&M Athletics"—a term of art that falsely indicated that Canning was paid to write the Biography exclusively for the Department and that the Department owned the resulting work. ROA 320,

501-03. Finally, to better support TAMU's trademark, Marquardt changed the title of the Biography from "An A&M Legend Comes to Life" to "The Original 12th Man." ROA 320-21, 501-03.

Marquardt provided the retyped Biography to Cannon, his supervisor (who was by that time Associate Director of Media Relations), as well as to others in the Department. ROA 307-08, 321. Cannon approved the Biography for distribution and for display on the Department's website. ROA 328, 341-42.

In the next 72 hours, the Department disseminated the full Biography to hundreds of thousands of people. The Biography was available on the Department's website, which (at the time) received approximately 10,000 unique visitors and 50,000 page views a day. ROA 319-20. The Department's official Twitter account, which (at the time) had approximately 145,000 followers, tweeted a link to the Biography on the website. ROA 322. Shortly thereafter, the University's official Twitter account, which (at the time) had approximately 160,000 followers, also linked to—and quoted from—the Biography. ROA 323. And the manager of the University's Twitter account, Lane Stephenson, sent a preview of and a prominently featured link to the Biography directly to the 77,000 subscribers who received the "TAMU

Times" e-newsletter. ROA 323-24, 328. He also placed the preview and the link on the front page of the e-newsletter's website. ROA 324. Just as the Department had intended, the Biography was then widely forwarded, copied, shared, blogged about, and reported on and linked to by various news organizations. ROA 323, 326, 505-06.

Bynum discovered these events two days after the Department had posted the Biography. ROA 319-20. He emailed Marquardt and Cannon, explaining that "Whit Canning wrote" the Biography for Bynum in 1997; it had "never been cleared for publication with anyone"; and Canning "did not write this story for TAMU or give them permission to publish" it. ROA 531-34.

Marquardt emailed back. ROA 325, 532-33. He stated that the Biography "was an important part of our strategic plan to show Texas A&M is the true owner of 'the 12th Man.'" ROA 325, 533. He acknowledged that he did not have permission to publish or reproduce the Biography. ROA 532-33. And, although he admitted that he had asked his secretary to retype the Biography, he did not explain why he changed the byline on the article or why he removed the copyright management information and any reference to Bynum. ROA 533.

The Department ultimately removed the Biography from its website. But, as a result of the Department's actions, the Biography nevertheless continued to be available on the internet and otherwise distributed widely. ROA 326, 505-14. And, not surprisingly, simply handing the copyrighted Biography to hundreds of thousands of Aggie fans destroyed the possibility of a successful print run of Bynum's book, since his potential purchasers already had free access to a key portion of the book's contents. ROA 306. The book remains unpublished to this day. ROA 306.

## II. Procedural History

On January 19, 2017, plaintiffs Michael Bynum and Canada Hockey LLC (collectively, "plaintiffs") brought suit, and on April 17, 2017, they filed the operative complaint. ROA 304-38. The Complaint named the Department, the 12th Man Foundation, and three individual officers of the Department—Brad Marquardt, Alan Cannon, and Lane Stephenson—"all in their individual capacities." ROA 304. Plaintiffs asserted six claims: (1) direct copyright infringement (against the Department, Marquardt, Cannon, and Stephenson); (2) contributory copyright infringement (against all defendants); (3) vicarious copyright infringement (against the Department and the Foundation); (4) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C.

§ 1202 *et seq.*[2] (against Marquardt and the Department); (5) violation of the Fifth and Fourteenth Amendments of the U.S. Constitution (against the Department); and (6) violation of the Takings Clause of the Texas Constitution (against the Department). ROA 327-35.

Defendants moved to dismiss those claims. ROA 581-604. The Department moved pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Department was inseparable from TAMU, which was in turn an arm of the state entitled to sovereign immunity, while the individual defendants—Marquardt, Cannon, and Stephenson—moved pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the Department's motion, rejecting Plaintiffs' argument that the Department should not be treated as the State for immunity purposes because it operates separately and receives no state funding. ROA 1863-64. It also rejected Plaintiffs' reliance on the Copyright Remedy Clarification Act, which purports to abrogate all state immunities for copyright infringement. ROA 1864-68.

[2] 17 U.S.C. § 1202(b) forbids intentionally removing or altering copyright management information, as well as distributing copyrighted material knowing that the copyright management information has been removed or altered.

Finding that the state's sovereign immunity deprived it of jurisdiction, the District Court dismissed the case against the Department. ROA 1867-68.

The individual defendants and the Foundation also moved to dismiss under Rule 12(b)(6) for failure to state a claim on the merits. ROA 591-603. The District Court held that Plaintiffs had failed to plead sufficient facts to support liability for copyright infringement as to Cannon, Stephenson, and the Foundation, granting dismissal as to them. ROA 1871-73, 1877-81. But it denied the motion to dismiss as to Marquardt, finding that the Plaintiffs had "pleaded facts demonstrating that Marquardt violated a clearly established right," and that the facts pleaded in the complaint supported an inference "that an objectively reasonable individual would have known (or had reason to know) that taking a work authored by another, having one's secretary type it up—omitting all indication of who owned or had edited the work—and distributing the work via an e-Newsletter, was bound to violate U.S. copyright laws." ROA 1874. The court further found that Plaintiffs had sufficiently pleaded direct infringement, contributory infringement, and violations of the Digital Millennium Copyright Act ("DMCA"). ROA 1875-76. The district court thus granted the motions to dismiss as to all defendants except for Marquardt. *See* ROA 1881-82.

Plaintiffs moved for reconsideration, and the court stayed the case pending the Supreme Court's resolution of *Allen v. Cooper*, 589 U.S. 248 (2020), which involved a State's assertion of sovereign immunity as to copyright claims. *See* ROA 1911, 1983. *Allen* ultimately held that Congress's effort to abrogate state immunity prophylactically for all copyright infringements exceeded its power under Section 5 of the Fourteenth Amendment, 589 U.S. at 260-66, and that the states did not waive their immunity for such infringements in the Plan of the Convention, *id.* at 256-60. After that decision, the parties submitted additional briefing on two issues left open after *Allen*: whether the Department had committed an actual constitutional violation that would support a case-by-case abrogation under *United States v. Georgia*, 546 U.S. 151 (2006), and whether the Supreme Court's then-recent decision in *Knick v. Township of Scott*, 588 U.S. 180 (2019), had affected Plaintiffs' takings claims. The court ultimately denied the motions for reconsideration, denied plaintiffs' motion to file a further amended complaint, and entered final judgment under Federal Rule of Civil Procedure 54(b) as to all defendants but Marquardt. *See* ROA 5530-65, 5574; *Canada Hockey LLC v. Texas A&M Univ. Athletic Dept.*, 484 F.Supp.3d 448 (S.D. Tex. Sept. 4, 2020).

After some discovery concerning whether Canning ever transferred ownership of the Biography to Bynum, Marquardt moved for summary judgment on the ground that Bynum never owned the document. ROA 3271. He also renewed his argument for qualified immunity, which the District Court had rejected on the motion to dismiss. Bynum cross-moved for partial summary judgment as to his ownership of the Biography. ROA 4238. The District Court denied both motions, finding disputed issues of material fact. ROA 5566-73; *Bynum v. Marquardt*, 2020 WL 5332994 (S.D. Tex. Sept. 4, 2020).

Both Plaintiffs and Marquardt appealed to this Court. Plaintiffs appealed the dismissal of claims against the Department on sovereign immunity grounds. This Court affirmed that ruling, finding (1) that the Department could not be sued separately from TAMU, an arm of the state of Texas entitled to immunity, *Canada Hockey, LLC v. Texas A&M Univ. Athletic Dept.*, 2022 WL 445172, at **3-6 (5th Cir. Feb. 14, 2022); (2) that Plaintiffs had failed to satisfy the requirements for case-by-case abrogation of immunity under *United States v. Georgia*, *see id.* at **6-9; and (3) that TAMU retained sovereign immunity vis-à-vis Plaintiffs' Takings claims, notwithstanding

*Knick*, *see id.* at *9.[3] Plaintiffs petitioned for *certiorari*, which the Supreme Court denied on October 3, 2022. 143 S. Ct. 118 (2022).

Marquardt separately appealed the denial of his motion for summary judgment on qualified immunity grounds—an appeal that the District Court certified as frivolous. *See* ROA 5649-59. This Court dismissed the appeal for lack of jurisdiction. *Canada Hockey, LLC v. Marquardt*, 2022 WL 252186 (5th Cir. Jan. 26, 2022). Marquardt had appealed the District Court's rejection of two distinct arguments. The first was that Bynum had failed to establish his ownership of Canning's article; the District Court had found that disputed fact issues precluded summary judgment. This Court found that issue outside its jurisdiction over an interlocutory appeal, which is limited to whether the relevant *law* is clearly established. *Id.* at **3-4. The second was an argument that Plaintiffs' statutory rights under the DMCA were not clearly established at the time of the alleged violation. But this Court held the appeal of that issue untimely, because the district court had rejected Marquardt's argument in its ruling on his motion to dismiss, and Marquardt had not appealed. Although he

[3] Plaintiffs had also appealed the merits dismissals of Cannon and Stephenson, which this Court affirmed. *See Canada Hockey*, 2022 WL 445172, at *10.

tried to argue that the district court's motion to dismiss ruling on the DMCA issue "merged" into its denial of summary judgment, this Court found the argument "improper." "Marquardt lost his right to challenge the denial of qualified immunity against the DMCA claim, because it is premised upon the same arguments as his non-appealed motion to dismiss." *Id.* at *4.

After these appeals, the remaining parties moved forward with discovery. Marquardt filed a new dispositive motion on April 2, 2025. Represented by new counsel, he moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). ROA 7601-10. Reprising an argument made by all three individual defendants in 2019, *see* ROA 587-91, Marquardt argued that the Texas Tort Claims Act barred Plaintiffs' suit because they had sued both a state employee (Marquardt) and his employer (the Department) in violation of the "election of remedies" provision in TTCA § 101.106(a). He also argued that because suit could have been brought under the TTCA against the Department, suit against the employee was barred by the immunity rule of TTCA § 101.106(f). In 2019, Plaintiffs had argued that federal preemption foreclosed any argument that state statutes limiting liability could narrow a federal statutory cause of action. *See* ROA 951-52. The district court had implicitly rejected Marquardt's argument (which went to the court's jurisdiction) in

denying his motion to dismiss, and Marquardt did not appeal that ruling. But on February 13, 2026, it accepted Marquardt's argument in response to the Rule 12(c) motion. ROA 7651-52.

The District Court began by adopting Defendant's assertion that "Marquardt, as an employee of the State, is, as a matter of law, afforded the protection of sovereign immunity unless that immunity has been waived." ROA 7639. Concluding that the TTCA was the only waiver potentially available, the District Court found that §§ 101.106(a) and 101.106(f) imposed necessary conditions on that waiver. Plaintiffs argued that no state waiver of immunity like the TTCA was necessary as to claims against individuals under the Copyright Act, ROA 7619, that the TTCA only governed state law claims against government officers and entities, ROA 7623-25, and that any effort to apply the TTCA to narrow the availability of a federal claim would be preempted by Congress's intent to provide a federal remedy, ROA 7625-27. The district court misconstrued these arguments as dependent on congressional abrogation of state sovereign immunity, ROA 7640, and thus foreclosed by *Allen v. Cooper*, ROA 7643-44. As a result, the District Court held that "unless the TTCA provides a means to avoid immunity, the Plaintiffs have not pleaded a cause of action upon which they can prevail." ROA 7644.

The court entered judgment for Marquardt on March 12, 2026. ROA 7653. Plaintiffs filed their notice of appeal on April 3, 2026. ROA 7654.

## SUMMARY OF ARGUMENT

This case has, at earlier stages, raised complex and unsettled questions involving state sovereign immunity, but this appeal involves a straightforward failure to apply settled law. The District Court held that Plaintiffs' federal copyright claims were barred by a Texas state law limiting the scope of the state's waiver of sovereign immunity in tort cases. This would make sense only if the lawsuit implicated Texas's sovereign immunity such that a waiver would be necessary to proceed. The only claims remaining in this suit, however, are brought against Defendant Marquardt in his personal capacity. By holding those claims barred, the District Court ignored the bedrock principle that "a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally." *Alden v. Maine*, 527 U.S. 706, 757 (1999).

Statutes like the Texas Tort Claims Act generally have little application to federal claims brought in federal court. But if Texas *had* set out to restrict the scope of federal claims against state officers in their individual capacity, federal law would preempt the attempt. The Copyright Remedy Clarification Act, Pub. L 101-553, 104 Stat. 2749 (Nov. 15, 1990) (codified at 17 U.S.C. §§ 501(a) and 511(a)), which subjects state officers to federal copyright liability on the same terms as private defendants, makes explicit what is nonetheless true of federal remedial statutes generally: State law may not carve particular defendants out of federal statutory liability, unless the constitutional immunity of the states themselves is at issue. The District Court erred in thinking that sovereign immunity was at issue here.

## STANDARD OF REVIEW

This Court "review[s] a district court's ruling on a Rule 12(c) motion for judgment on the pleadings de novo." *Johnson v. Miller*, 98 F.4th 580, 583 (5th Cir. 2024) (quoting *Gentilello v. Rege*, 627 F.3d 540, 543 (5th Cir. 2010)). "The standard for dismissal 'is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).'" *Id*. (quoting *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015)). "To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Guerra v. Castillo*, 82 F.4th 278, 284-85 (5th Cir. 2023) (quoting *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022)). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Aldridge v. Miss. Dept. of Corrections*, 990 F.3d 868, 873 (5th Cir. 2021) (quoting *Doe v. MySpace*, 528 F.3d 413, 418 (5th Cir. 2008)).

## ARGUMENT

### I. The District Court's application of the Texas Tort Claims Act to bar Plaintiffs' federal copyright claims hinged on its belief that Marquardt—a state officer sued in his personal capacity—was entitled to invoke Texas's sovereign immunity.

A plaintiff alleging violations of a federal statute does not ordinarily need to fit his claim into conditions imposed by a state statute. The only reason that would be necessary here is if the federal constitutional principle of state sovereign immunity would block the federal suit absent a state waiver. That principle did, in the end, block Plaintiffs' suit against the Department, and Plaintiffs did not attempt to show any state waiver that covered this case. Marquardt now insists, however, that a state statutory waiver of sovereign immunity is also necessary for Plaintiffs' claim against him—a state officer sued in his personal capacity—to go forward. The District Court accepted this

assertion, finding it a "straight-forward legal proposition[]" that "Marquardt, as an employee of the State, is, as a matter of law, afforded the protection of sovereign immunity unless that immunity has been waived." ROA 7639. That proposition is anything but straight-forward; rather, it fundamentally misconstrues the structure of federal remedies against unlawful action by state governments and their officers.

Everything in the District Court's order granting judgment against Bynum on the pleadings flowed from this basic error. Finding Marquardt to have sovereign immunity, the court accepted his argument that "the Texas Tort Claims Act . . . is the only possible waiver that applies to Plaintiff's claims because copyright claims equate to a tort." ROA 7640-41. That reasoning had two consequences that were dispositive. First, the TTCA has an "election of remedies" provision, Tex. Civ. Prac. & Rem. Code § 101.106(a), which says that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Because Bynum had initially sued the Texas A&M Athletic Department as

well as three individual officers of that department, § 101.106(a) barred any suit against the officers under the TTCA. ROA 7645.

Second, the District Court accepted Marquardt's argument under § 101.106(f) of the act, which provides that if a suit against an employee of a state governmental unit "could have been brought under [the TTCA] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only" and the suit must be dismissed "unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant" within 30 days. Tex. Civ. Prac. & Rem. Code § 101.106(f). As the Court explained, the fact that the governmental unit would be immune from suit does not render § 101.106(f) inapplicable. That section thus independently required that "the claims alleged here against Marquardt must be dismissed." ROA 7651.

Bynum does not dispute that, if the TTCA governs this suit, it bars his claims against Marquardt. But as the District Court properly observed, "the application of the TTCA to a copyright infringement claim is the threshold question." *Id.* at 2-3. That threshold issue is not simply whether the TTCA is the right statutory waiver for a copyright claim, but whether a waiver of immunity is necessary for Bynum's claim against Marquardt to succeed. It

could be necessary if Bynum's cause of action against Marquardt rested on state law, for then state law would define the limits of the claim and the available defenses. A waiver of immunity would also be necessary if Marquardt shared the state's sovereign immunity, and such waivers being a matter of legislative grace the state would largely be free to impose whatever conditions it liked. Bynum's claim, however, rests on supreme federal law, which specifically creates in the CRCA a cause of action against state officials. And Marquardt is *not* the state for purposes of sovereign immunity.

This is hornbook law: As the Wright and Miller treatise explains, "the fact that a governmental entity has been given sovereign immunity in its own state courts by state law is not dispositive of federal jurisdiction. State court immunity does not, by itself, mean that an entity is part of the state for Eleventh Amendment purposes, and it will not prevent an individual from securing his rights under federal law in a federal court." 13 Fed. Prac. & Proc. Juris. § 3524.2 (3d ed., updated 2026). Or, as Professor Laycock puts it, "Government employees are not sovereign; they can be sued in their personal capacities for damages from their personal funds." Douglas Laycock, *Modern American Remedies: Cases and Materials* 1068 (3rd ed. 2002). To be sure, various official immunities shield officers sued in their personal capacities,

and Marquardt has consistently (if so far unsuccessfully) asserted that he has qualified immunity here. But no such argument is before this Court. Bynum had no need to comply with the TTCA's conditions on the state's waiver of *sovereign* immunity because Marquardt had no sovereign immunity to waive.

## II. Texas's sovereign immunity does not cover state officers sued in their individual capacity for violations of federal law.

The district court's premise is mistaken, because federal law governs the defenses available to state officers vis-à-vis federal law claims. That law differentiates sharply between government entities and individual officers. It is well-established that "the Eleventh Amendment does not prevent suits against state officers for money damages to be paid out of the officers' own pockets, even when the damages are retrospective compensation for past harms." Erwin Chemerinksy, *Federal Jurisdiction*, § 7.5.2, at 478 (8th ed. 2021).[4] This principle was familiar to Chief Justice Marshall in the early Eighteenth Century, and it was, in various forms, baked into the English

---

[4] *See also* 13 Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Juris. § 3524.2 (3d ed., updated 2026) (noting that "if the officer will be personally liable, the Eleventh Amendment will not bar the suit"; "the fact that a defendant holds public office does not make him immune from personal liability for damages") (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

conception of sovereign immunity at common law. It balances the need to protect the public fisc with the imperative to redress government violations of law. The rule admits of few exceptions, and none of them apply here.

### A. Officer suits for damages take fundamentally different tracks depending on whether the suit is in the officer's official or personal capacity.

The First Amended Complaint named three individual defendants, including Mr. Marquardt, and stated that they were sued "all in their individual capacities." ROA 304. On several occasions, the Supreme Court has "sought to eliminate lingering confusion about the distinction between personal- and official-capacity suits":

> [O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' . . . Suits against state officials in their official capacity therefore should be treated as suits against the State. . . . Because the real party in interest in an official-capacity suit is the governmental entity and not the named official. . . . the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses.

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting and citing *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)). Personal-capacity suits are quite different:

> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officers for actions taken under color of state law. . . . [O]fficials sued in their personal

> capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.

*Id. Hafer* reiterated that "[t]he Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts." *Id.* at 31.[5]

This distinction between official and individual capacity is fundamental. It resolves this appeal. The TTCA is irrelevant because Bynum's claim under the Copyright Act against Marquardt in his personal-capacity did not implicate the state's sovereign immunity. The only immunity that Marquardt can assert is qualified immunity, which has nothing to do with the TTCA.

One might imagine three possible arguments to justify collapsing the distinction between personal- and official-capacity suits: (1) where the officer is acting within the scope of his official duties, (2) where the state is sued under some law other than § 1983, or (3) where the state is the "real party in interest" either because holding the officer liable will affect his duties on the

---

[5] *Accord Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974) (holding that because plaintiffs were "seeking to impose individual and personal liability on the named defendants," "their claims . . . are not barred by the Eleventh Amendment" even though they sought damages rather than prospective relief).

state's behalf or because the state will likely end up indemnifying the officer for the judgment. But the first two of these exceptions do not, in fact, exist; the third is extremely narrow and inapplicable here.

First, Marquardt persuaded the District Court that because he was acting within the scope of his employment as an officer of TAMU, he was entitled to assert the same state immunities that shielded TAMU itself. The Supreme Court squarely rejected that sort of argument in *Hafer*, 502 U.S. 21 (1991).[6] The plaintiff there sued under 42 U.S.C. § 1983, which requires that the defendant have acted "under color of state law." As the Court pointed out, barring § 1983 suits against state officers whenever they were acting within the scope of their public duties would eliminate much of the conduct that the statute was meant to reach. *See* 502 U.S. at 28. Federal law is not concerned only with state officers gone rogue.

---

[6] Hafer, the officer, had relied on language from the Supreme Court's decision in *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), stating that "'neither a State nor its officials acting in their official capacities are 'persons' under §1983,'" for "the proposition that she may not be held personally liable . . . because she acted in her official capacity as auditor general of Pennsylvania." See *Hafer*, 502 U.S. at 26 (quoting *Will*, 491 U.S. at 71). But the Court explained that "the claims considered in *Will* were official-capacity claims; the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.*

Moreover, the *Hafer* Court explained that excluding liability for public acts "cannot be reconciled with our decisions regarding immunity of government officers otherwise personally liable for acts done in the course of their official duties." *Id.* That is because extending the state's *sovereign* immunity to officers "would absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities." *Id.* Instead, as the Court pointed out, a separate jurisprudence of official immunity limits "absolute" immunity to particularly sensitive government functions—e.g., judging, legislating, or prosecuting—while according only a "qualified" immunity to most other officials. *Id.* at 28-29.[7] If Marquardt were right that *sovereign* immunity cloaks all official acts, qualified immunity would come up only rarely—and Marquardt would not have relied on it so heavily throughout this litigation.

Second, Marquardt suggested to the district court that the availability of personal capacity suits against state officials is somehow restricted to suits under § 1983. *See* ROA 7g35. It is true that most of the caselaw developing

---

[7] *See also Scheuer v. Rhodes*, 416 U.S. 232, 237-49 (1974) (rejecting arguments that either the state's sovereign immunity or some form of absolute executive immunity barred personal capacity claims for damages against officers of the Ohio national guard).

the distinction between individual and official capacity has developed in § 1983 cases, as it is the federal statute most focused on suing state officers for violating federal law.[8] But the Supreme Court has treated the distinction between individual and official capacity suits as a basic principle of litigation against government actors, not as a quirk of the § 1983 statute.

In *Lewis v. Clarke*, 581 U.S. 155 (2017), for example, the Court held that the sovereign immunity of an Indian tribe did not bar individual-capacity damages against tribal employees for torts committed within the scope of their employment, *id.* at 163, even though tribal and state immunities are not identical and the underlying suit rested on state common law, not a federal statute. The Court applied its personal capacity jurisprudence under *Hafer*, *Graham*, and similar cases, stating that "[t]here is no reason to depart from these general rules in the context of tribal sovereign immunity." *Id.* Because

---

[8] Because § 1983 extends to violations of the "the Constitution *and laws*," 42 U.S.C. § 1983 (emphasis added); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (holding that plaintiffs may bring federal statutory claims under § 1983), Bynum could have used § 1983 as a vehicle to pursue his copyright claims against Marquardt. There was no reason to do so, as the CRCA clearly applies the copyright statute to state actors and prevailing plaintiffs may seek attorney's fees under the Copyright Act independently of 42 U.S.C. § 1988. But the availability of § 1983 as a remedy for statutory claims makes it untenable to draw a strong line between personal capacity claims under § 1983 and under other statutes.

the tribal officer was sued in his personal capacity, the tribe's sovereign immunity was "simply not in play." *Id.*

Courts that have considered the issue have held that federal suits under the Copyright Act may proceed against state officials in their personal capacity without being subject to any sovereign immunity defense. In *Richard Anderson Photography v. Brown*, 852 F.2d 114 (4th Cir. 1988), a pre-CRCA case, the Fourth Circuit determined that Congress had not clearly expressed its intent in the Copyright Act to abrogate the states' sovereign immunity from private suits for money damages. Sovereign immunity thus barred any damages suit against the institutional defendant, a state university. *Id.* at 117. But the Fourth Circuit held that the plaintiff *could* proceed against a university officer in her individual capacity. Because the suit did not involve conduct, like entering into a contract, that only the state could undertake and the state would not have been legally obligated to pay the judgment entered against the officer, the individual capacity suit could go forward. *Id.* at 122. "The mere fact that her conduct was undertaken in the course of her state employment

does not of course relieve her of individual liability," the court said, "even if her employer could not be sued for it." *Id.* Other courts have held similarly.[9]

The third possible exception to the "party of record" rule—that a personal-capacity suit must be treated as one against the state where the state is the "real party in interest"—does exist but is inapplicable here. *See Ford Motor Co. v. Dept. of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945) (stating that "if the state is the real, substantial party in interest," then it "is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants"). This exception has generally been limited to situations in which "the action is in essence one for the recovery of money

[9] *See, e.g.*, *Campinha-Bacote v. Bleidt*, 2011 WL 4625394 (S.D. Tex. Oct. 3, 2011) (holding that sovereign immunity did not bar copyright suits against university officials in their individual capacity, even though they acted within the scope of their employment, but noting that cases like *Richard Anderson Photography* do not obviate a qualified immunity defense); *Marketing Information Masters, Inc. v. Bd. of Trustees of Cal. St. Univ. System*, 552 F.Supp.2d 1088, 1093-95 (S.D. Cal. 2008) (holding that sovereign immunity barred copyright suits against state university but that suit could proceed against officer in their individual capacity); *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of Univ. System of Georgia*, 2008 WL 1805439 (M.D. Ga. April 18, 2008) (not reported in F.Supp.2d) (rejecting claim by state university officers that they were entitled to invoke the state's sovereign immunity because their infringing activities were done in the scope of their employment); *Kersavage v. Univ. of Tennessee*, 731 F. Supp. 1327, 1330 (E.D. Tenn. 1989) (following *Brown* and holding that state university officers could assert only qualified immunity, not sovereign immunity, against a copyright suit in their individual capacities). Marquardt asserted in his Reply in the district court that the *Kersavage* case "had nothing to do with claims against state employees," ROA 7637, but that assertion is mistaken. *See Kersavage*, 731 F. Supp. at 1330.

from the state." *Id.* Neither Marquardt nor the District Court specifically argued that the state was the real party in interest here, Bynum's complaint seeks a judgment from Marquardt's personal funds, and the fact that Marquardt is now represented by private counsel reflects that the State has no direct interest in the litigation.

In any event, the "real party in interest" exception has been construed quite narrowly. For example, one might think that the strongest argument for applying the exception would be where the state had pre-committed to indemnify its employees in the event of a judgment against them. But the Supreme Court held in *Lewis* that "an indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." 581 U.S. at 164-65. As the Court explained, that holding "follows naturally from the principles" demarcating the separate function and treatment of individual and official capacity suits. *Id.* at 165.[10]

---

[10] Dean Chemerinsky explains that "[i]f the Eleventh Amendment prohibited awards against state officers where indemnification policies exist, states would lose nothing by adopting such policies because they never could be required to pay a penny. At the same time, injured victims would be wholly without federal remedies because they would be prohibited from suing both the state officers and the state government in federal court." Chemerinsky, § 7.5.2, at 479.

The Court has likewise rejected arguments that the state is the real party in interest because individual liability of its officials will affect their performance. In *Hafer*, the Court acknowledged that "imposing personal liability on state officers may hamper their performance of public duties. But such concerns are properly addressed within the framework of our personal immunity jurisprudence. . . . Insofar as respondents seek damages against Hafer personally, the Eleventh Amendment does not restrict their ability to sue in federal court." 502 U.S. at 31. Qualified immunity, in other words, provides a strong shield protecting individual officers' ability to do their jobs free from unreasonable fear of liability—without extending sovereign immunity to those officers. As one leading scholar has concluded: "Almost never [do] the courts refuse to accept a properly pleaded complaint by coercively recharacterizing the complaint as being 'really' against the state and therefore barred by the Eleventh Amendment." John C. Jeffries, Jr., *In Praise of the Eleventh Amendment and Section 1983*, 84 Va. L. Rev. 47, 65 (1998).

### B. The party-of-record rule foreclosing officers from invoking the state's immunity is longstanding and serves vital functions.

The doctrine of state sovereign immunity has coexisted in American law from the beginning with the principle that a suit against a state officer does not implicate that immunity.[11] The famous case of *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824), involved a suit by the Bank against Ralph Osborn and other officers of the State of Ohio to recover money that they had seized from the Bank. Chief Justice Marshall rejected Osborn's invocation of the Eleventh Amendment:

> It may, we think, be laid down as a rule which admits of no exception, that, in all cases where jurisdiction depends on the party, it is the party named in the record. Consequently, the 11th amendment, which restrains the jurisdiction granted by the constitution over suits against States, is, of necessity, limited to those suits in which a State is a party on the record. *Id.* at 857.[12]

---

[11] *See, e.g.*, William Baude, Jack Goldsmith, John F. Manning, James E. Pfander, & Amanda L. Tyler, *Hart and Wechsler's The Federal Courts and the Federal System* (8th ed. 2025) (surveying early cases and concluding that "sovereign immunity means as a practical matter that plaintiffs are expected to pursue many of their claims against responsible officers instead of the government").

[12] *See also United States v. Lee*, 106 U.S. 196, 207-08 (1882) ("[W]hile acceding to the general proposition that in no court can the United States be sued directly by original process as a defendant, there is abundant evidence in the decisions of this court that the doctrine, if not absolutely limited to cases in which the United States are made defendants by name, is not permitted to interfere with the judicial enforcement of the established rights of plaintiffs when the United States is not a defendant or a necessary party to the suit."). Although the Court has recognized some exceptions to the party of record rule since, they are quite limited. *See, e.g.*, *Lewis*, 581 U.S. at 167 ("We have not before treated a lawsuit

This "party of record" rule is not simply a formalism; rather, it reflects how the common law tradition reconciled sovereign immunity with the rule of law.[13] As Professor John Orth has explained: "What Marshall did in *Osborn* was to reenact in America one phase of English constitutional history. . . . If the king cannot do wrong, but wrong has in fact been done, then someone other than the king has done it. An errant officer could not assert the sovereign's immunity. Marshall simply put this thinking to work in *Osborn* to minimize the extent to which the Eleventh Amendment insulates state officers from suit." John Orth, *The Judicial Power of the United States: The Eleventh Amendment in American History* 40-41 (1987).

Like many traditional fixtures in the law of remedies, this formal rule has survived because it makes functional sense.[14] According to Dean John Jeffries, the party of record rule balances immunity and accountability by

---

against an individual employee as one against a state instrumentality. . . . Nor have we ever held that a civil rights suit under 42 U.S.C. § 1983 implicates the Eleventh Amendment and a State's sovereign immunity from suit.").

[13] *See Hart & Wechsler*, *supra*, at 1147-54 (emphasizing the key role of officer suits in the common law period and the early Republic).

[14] *See, e.g.*, *Alden*, 527 U.S. at 756-57 (emphasizing availability of officer suits in concluding that "[t]he principle of sovereign immunity as reflected in our jurisprudence strikes the proper balance between the supremacy of federal law and the separate sovereignty of the States").

replacing a categorical immunity rule with a reasonableness defense. "In the main, he argues, the Eleventh Amendment "functions to force civil rights plaintiffs to sue state officers rather than the states themselves, thus triggering qualified immunity." Jeffries, *supra*, at 59. If sovereign immunity prevented relief even for clearly unlawful government action, the law of state sovereign immunity would most likely have developed very differently. As Dean Jeffries explains, "[i]f it were not possible to circumvent the Eleventh Amendment through Section 1983, the Supreme Court would long ago have confined the Eleventh Amendment to diversity cases or adopted some other debilitating construction." *Id*. Enforcing the party of record rule by allowing individual capacity suits against government officers thus remains crucial—as it has been all along—to maintaining the balance in our remedial system.

### C. The District Court's treatment of this case prior to the motion for judgment on the pleadings demonstrated its understanding that sovereign immunity did not cover Marquardt in his individual capacity.

This case has been litigated from the beginning in light of the party of record rule and the distinction between suits against state institutions and those against officers in their personal capacities. Marquardt's litigation strategy, up until the current Rule 12(c) motion, relied primarily on qualified—not sovereign--immunity. He moved to dismiss the claims against

him in 2019 on qualified immunity grounds, arguing that the relevant DMCA law was not clearly established and that Marquardt's actions did not clearly fall outside "fair use." ROA 600-03. When the District Court rejected that motion, Marquardt moved for summary judgment on a new qualified immunity theory that Bynum's ownership of the Canning article was not "clearly established" at the time that Marquardt appropriated it. ROA 3271. When that motion was also denied, ROA 5566-73, Marquardt filed an interlocutory appeal to this Court, again solely arguing qualified immunity. *See Canada Hockey, LLC v. Marquardt*, 2021 WL 4096585, at *2-3 (5th Cir. Sept. 8, 2021). Marquardt clearly understood that his primary protection rested on federal official immunity doctrine—not state sovereign immunity or state statutes.

The State had argued early on the TTCA barred suit against all three individual defendants. ROA 587-91. Plaintiffs responded that, if the statute were interpreted to bar their suit, it would be preempted by Congress's provision of a remedy for copyright infringement by state officers. ROA 951-52. Importantly, the District Court completely ignored the argument, but its order denying Marquardt's motion to dismiss necessarily rejected it. Marquardt did not raise it on his prior appeal to this court, even though he

could have done so.[15] Even if Marquardt were entitled to state sovereign immunity, his failure to challenge the District Court's 2019 denial of his TTCA argument for six years (including in his appeal to this Court) might constitute waiver by conduct. In *Neinast v. Texas*, 217 F.3d 275 (5th Cir. 2000), this Court said that even though immunity goes to subject matter jurisdiction, "the state cannot simultaneously proceed past the motion and answer stage to the merits and hold back an immunity defense." *Id.* at 279. This is particularly true if the state derives some litigation advantage from its delay. *See id.* at 279-80. Here, Marquardt arguably *did* derive an advantage by trying out his qualified immunity defense at a point when there was still a risk that sovereign immunity would be held to be abrogated, then invoking his claim to sovereign immunity when that risk was past but qualified immunity had lost on appeal. Regardless of whether Marquardt waived his argument, however, the critical point is that this case has generally proceeded on the (correct) assumption that he was entitled only to qualified immunity, not the state's sovereign immunity.

[15] *See James v. Hegar*, 86 F.4th 1076, 1080 (5th Cir. 2023) ("Orders denying Eleventh Amendment sovereign immunity are reviewable on interlocutory appeal under the collateral order doctrine.") (internal citation omitted).

The District Court's orders reflected that same understanding up until that court's final ruling on Marquardt's Rule 12(c) motion. In its key rulings in 2019 and 2020, Judge Hanen granted TAMU's motion to dismiss on sovereign immunity grounds, holding that the University was an arm of the state, that the Athletic Department could not be sued separately, and that Congress's effort to abrogate state sovereign immunity in the CRCA was unconstitutional. ROA 1860-68. In reaching these conclusions, Judge Hanen treated the personal-capacity claims against Marquardt, Cannon, and Stephenson as legally separate and not subject to sovereign immunity. He rejected the claims against Cannon and Stephenson as inadequately pled on the merits, ROA 1877-81, but held that the Complaint *did* adequately allege claims against Marquardt that foreclosed dismissal on qualified immunity grounds. ROA 1873-76. That ruling, as well as his ruling on Marquardt's motion for summary judgment, treated *qualified* immunity as the only immunity in play for Marquardt.

This Court on appeal of the 2019 and 2020 rulings viewed the case in exactly the same light. It heard two separate appeals: one involving TAMU's claim to sovereign immunity and the rejection of the claims against Cannon and Stephenson on the merits, and the other involving Marquardt's claim to

qualified immunity. Marquardt was not a party to the sovereign immunity appeal. As already noted, he did not appeal the District Court's failure to extend its sovereign immunity holding to the claims against *him*. Nor did this Court, in affirming the District Court's rejection of Marquardt's qualified immunity, say anything about Marquardt's entitlement to *sovereign* immunity. Because qualified immunity is not jurisdictional and sovereign immunity *is*, the latter issue should have been addressed first if it were legitimately in play.

All of this is simply to say that, for nearly a decade, this case was generally litigated by all concerned within conventional understandings of the relationships between state sovereign immunity and the liability of individual officers in their personal capacity for violations of federal law. Marquardt's motion for judgment on the pleadings was an abrupt departure from those understandings. The earlier approach was the correct one, and the District Court's departure from that approach, nine years in, was error.

### D. The authorities cited by Marquardt and the District Court do not support extending the state's sovereign immunity to its officers.

The crucial point in the District Court's opinion below is its statement, in the opinion's second paragraph, that "Marquardt, as an employee of the State, is as a matter of law, afforded the protection of sovereign immunity

unless that immunity has been waived." ROA 7639. In contrast to the Court's careful and thorough treatment of sovereign immunity in its earlier rulings, the Court offered no rationale and cited only a single case for this new proposition. That case was *Thongsonlone v. Office of the Attorney General for Texas*, 2018 WL 1898457 (S.D. Tex. Apr. 20, 2018), which involved a *pro se* plaintiff's claim against the Office of the Texas Attorney General for improperly denying him compensation under the Texas Crime Victim's Compensation Act. In its brief unpublished opinion, the court wrote that "[a]s an agent of the state of Texas, Defendant is entitled to Eleventh Amendment immunity absent waiver or abrogation." *Id.* at *1. That is certainly correct, but the defendant in *Thongsonlone* was the *Office* of the Attorney General—at state agency, not an individual officer sued in his personal capacity. Settled law holds that state sovereign immunity applies to officers sued in their *official* capacities because such a suit is a suit against the office itself. *See Lewis*, 581 U.S. at 162 ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."); Chemerinsky, *supra*, § 7.5.2, at 484. In *Thongsonlone*, however, the suit did not even name an individual defendant; the plaintiff literally sued the "Office of the Attorney General." That hardly

establishes the proposition for which the District Court cited the case—that is, that *individual officers* acting as agents are treated as the state, regardless of the capacity in which they are sued.

*Thongsonlone* cited two other decisions in support of the sentence that the District Court quoted here, but neither comes any closer to supporting the District Court's holding. *Johnson v. Prairie View A&M Univ.*, 587 Fed. Appx. 213 (5th Cir. 2014), was a suit by a former employee against a state university, and this Court had little trouble concluding that the university was an arm of the state entitled to state sovereign immunity. There were no individual officer defendants to consider in that case. Likewise, *Lowery v. Univ. of Houston—Clear Lake*, 82 F. Supp.2d 689 (S.D. Tex. 2000), was a case against a Texas public university with no individual officer defendants. Its only relevant holding was that the university enjoyed sovereign immunity as "an instrumentality of the State of Texas." *Id.* at 693. *Thongsonlone* cited both these cases correctly, because *Thongsonlone* also dealt with an institutional defendant that, under settled precedent, was an arm of the state. None of these cases comes near holding what the District Court cited them for here—that is, that an individual state officer may assert the state's sovereign immunity even in a personal-capacity suit, simply because he was acting within the scope of

his employment. And even if they did, of course, they would be contrary to decades of Supreme Court precedent.

## II. Texas statutes cannot limit the application of the federal Copyright Act to state officers.

Marquardt's effort to invoke the Texas Tort Claims Act as a defense to Bynum's federal copyright claims is also preempted by federal law. In the Copyright Remedy Clarification Act, Congress made clear that the set of persons liable for copyright infringement "includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity." CRCA § 2(a)(1), Pub. L 101-553, 104 Stat. 2749 (Nov. 15, 1990) (codified at 17 U.S.C. § 501(a)). The CRCA goes further by explicitly abrogating all immunities for states and state officers:

> Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for a violation of any of the exclusive rights of a copyright owner provided by sections 106 through 119, for importing

> copies of phonorecords in violation of section 602, or for any other violation under this title.

*Id.* §2(a)(2) (codified at 17 U.S.C. § 511(a)). To the extent that these provisions seek to abrogate the constitutional principle of state sovereign immunity, the Supreme Court's decision in *Allen v. Cooper*, 589 U.S. 248 (2020), rendered them unenforceable. But neither that decision nor any other challenged Congress's ability to hold state officers to account for copyright violations in their individual capacity.[16] The CRCA's clear statement of Congress's intent to provide federal remedies preempts any contrary defenses, short of the states' constitutional immunity, that state law might seek to interpose.

The CRCA plainly subjects state officers to liability for federal copyright violations committed while acting within those officers' official capacity—that is, within the scope of their state employment.[17] It expressly preempts the TTCA, as Marquardt and the District Court construed it in this

---

[16] *See, e.g.*, *Marketing Information Masters*, 552 F.Supp.2d at 1093-95 (holding, prior to *Allen*, that the CRCA could not constitutionally abrogate the states' sovereign immunity but that the plaintiff could proceed under the CRCA against a state officer in their individual capacity).

[17] The CRCA's reference to "official capacity" concerns the capacity in which the officer was "acting," not the capacity in which the officer is sued. *See* 17 U.S.C. § 511(a).

case. Section 101.106(a) of the TTCA—the election of remedies provision—is expressly preempted by § 2(a)(1) of the CRCA, which requires that state entities and officer must be liable for copyright infringement "in the same manner and to the same extent as any nongovernmental entity." The election of remedies provision, after all, creates a defense that only government entities and officers enjoy. And Section 101.106(f)—which effectively renders state employees immune from suit by requiring plaintiffs to sue the state agency that employs them—creates an "other doctrine of immunity" that is expressly preempted by CRCA § 2(a)(2). Unlike the sovereign immunity of the state itself, the TTCA's statutory protections are subject to preemption by federal statute.

The CRCA is also preempted on conflict grounds. As the District Court's decision makes clear, it is impossible to comply with both the TTCA and the CRCA. *See, e.g.*, *Zyla Life Sciences, LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 329 (5th Cir. 2025) (stating that "impossibility preemption . . . arises when it is impossible to obey both state and federal requirements"). The CRCA requires that a copyright plaintiff be able to sue both a state officer and the agency that he works for, but the TTCA requires the plaintiff to elect a remedy against one or the other. Worse, TTCA §

101.106(f), as construed by the Texas courts, poses a serious conflict with the federal copyright remedy. As the District Court acknowledged, a claim against a state employer "could have been brought under [the TTCA]"—and would thus bar a claim against the employee under § 101.106(f)—even if the TTCA does not waive sovereign immunity for that claim. *See* ROA 7650. Hence, the Texas Supreme Court has recognized that § 101.106(f) "does . . . foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011). As the District Court rightly concluded, "section 101.106(f) confers immunity on a sued state employee if the conditions of subsection (f) are met." ROA 7651. That is precisely what CRCA § 2(a)(2)'s prohibition of "other doctrine[s] of immunity" forbids.

More broadly, the TTCA—again as construed and applied by Marquardt and the District Court—conflicts with Congress's purpose to provide a federal remedy against copyright infringers, whether they are private or governmental actors. *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (stating that state law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). The preemptive effect of federal remedial statutes has been

explored most fully in a line of cases concerning state-law procedural and remedial limitations on federal causes of action when they are brought in state court. In *Haywood v. Drown*, 556 U.S. 729 (2009), New York had stripped its own courts of jurisdiction to consider claims against state correctional officers for money damages, directing those cases to a court of claims and subjecting them to various remedial limitations. The Supreme Court held that this procedure could not be applied to plaintiffs suing correction officers under § 1983, even though the New York procedure applied to federal and state claims alike. Finding that New York's procedural scheme "operates more as an immunity-from-damages provision than as a jurisdictional rule," *id.* at 736 n.5, the Court determined that "[t]he State's policy, whatever its merits, is contrary to Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages." *Id.* at 736-37.

A second leading case, *Howlett v. Rose*, 496 U.S. 356 (1990), is even closer to this one. The Florida Supreme Court had construed that state's statutory waiver of sovereign immunity to bar civil rights suits against the state and other government entities in state court. The Florida courts had extended this immunity, moreover, to municipalities and other entities that

would not be entitled to state sovereign immunity under federal law. The Supreme Court held in *Howlett*, however, that state courts could not refuse to hear federal § 1983 suits against municipal bodies on the ground of this state immunity, explaining that the "elements of, and the defenses to, a federal cause of action are defined by federal law." 496 U.S. at 375.[18] Put another way, Florida's broad immunity doctrine was preempted because it interposed an obstacle to Congress's purpose to create broad remedies for violations of federal civil rights.

Commentators have read *Haywood* and *Howlett* as holding that "state courts generally must hear §1983 suits and may not apply state law immunities as a defense." Chemerinsky, *supra*, § 8.1, at 529.[19] Importantly, these cases held that state law immunities were preempted by federal causes of action even though they only applied when those causes of action were filed in *state* court. Marquardt's argument poses a much greater interference with federal policy because he persuaded the District Court to apply broad state immunities

---

[18] *See also Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 595 (5th Cir. 2006) (citing *Howlett* for the proposition that "no state may employ its common law principles of sovereign immunity to redefine the contours of a federally created right or defense").

[19] *See also Owen v. City of Independence*, 445 U.S. 622, 648 n.30 (1980) ("Municipal defenses—including an assertion of sovereign immunity—to a federal right of action are, of course, controlled by federal law.").

to bar federal claims in *federal* court as well. If the Texas TTCA does, in fact, purport to bar all copyright claims against state officers, in federal or state court, then it is preempted *a fortiori* under *Haywood* and *Howlett*.

Given these precedents, it is not surprising that the Fourth Circuit rejected an argument similar to Marquardt's even prior to the CRCA's enactment. In *Richard Anderson Photography*, the district court had rejected an individual capacity suit against an officer of a Virginia public university on the ground that Virginia law conferred immunity on state officials when performing discretionary functions. *See* 852 F.2d at 116. The Fourth Circuit rejected this holding on grounds that it considered to be "simple": "Without regard to the exact nature of any such state law of immunity . . . state law cannot provide immunity to persons sued for violating the Copyright Act in the way here alleged. The Supremacy Clause, U.S. Const. art. VI cl. 2, precludes any such application of state immunity law." *Id.* at 122. Once Congress has defined protected federal rights, "the states cannot either enhance or diminish the scope of protection afforded to those categories of writings . . . . [A]ny immunity provided by state law for violators of rights in those materials would obviously diminish the scope of the Act's protection." *Id.* at 123.

It is unlikely that the Texas legislature intended this result, but if it did, then it is invalid under the Supremacy Clause.

## Conclusion

The District Court's decision granting judgment to Marquardt on the pleadings should be reversed.

Respectfully submitted,

s/*Ernest A. Young*
Ernest A. Young
*Counsel of Record*
3208 Fox Terrace Dr.
Apex, North Carolina 27502
Telephone: (919) 360-7718
young@law.duke.edu

Charles W. Prueter
FORTIF LAW PARTNERS, LLC
2021 Morris Avenue, Suite 300
Birmingham, Alabama 35203
Telephone: (205) 792-2639
charles@fortif.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Fifth Circuit Rule 32.2 because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), this document contains 10,752 words according to Microsoft Word.

This document complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (6) and Fifth Circuit Rule 32.1 because this document has been prepared in Microsoft Word using Times New Roman, which is a proportionally spaced face that includes serifs, in 14-point type. The footnotes are in 12-point type.

s/*Ernest A. Young*
Ernest A. Young
*Counsel of Record*
3208 Fox Terrace Dr.
Apex, North Carolina 27502
Telephone: (919) 360-7718
young@law.duke.edu

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2026, the foregoing brief was filed electronically with the Clerk of the Court using the Court's ECF System. Notice of this filing will be sent electronically by operation of the Court's electronic filing system to all counsel of record. A hard copy will be provided to counsel via U.S. Mail:

Ian Davis
Ray Chester
McGinnis Lochridge LLP
1111 W. 6th Street, Building B, Suite 400
Austin, Texas 78703
idavis@mcginnislaw.com
rchester@mcginnislaw.com

s/*Ernest A. Young*
Ernest A. Young
*Counsel of Record*
3208 Fox Terrace Dr.
Apex, North Carolina 27502
Telephone: (919) 360-7718
young@law.duke.edu